UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| FRANCISCO MARTINEZ GODINEZ and ISRAEL RANGEL CRUZ<br><br>   Plaintiffs,<br><br>v.<br><br>GUADALUPE MORENO and G & G MORENO, INC.<br><br>   Defendants. | Civil Action No. 3: 20-CV-03044 |

## COMPLAINT

### PRELIMINARY STATEMENT

1. This is an action for damages and declaratory relief by two H-2A guest workers against the employers for whom they worked from March 2019 until early 2020.

2. This action seeks relief for Defendants' violations of Plaintiffs' rights under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA"), the common law of contracts, and the Iowa Consumer Fraud Act, Iowa Code § 714H.

3. Plaintiffs Francisco Martinez Godinez and Israel Rangel Cruz (collectively, "Plaintiffs") are citizens of Mexico who were admitted to the United States on a temporary basis pursuant to 8 U.S.C. § 1101(a)(15)(H)(ii)(a) to work for Defendants maintaining farm buildings from March 2019 through early 2020.

4. Defendants violated their obligations to Plaintiffs under the H-2A regulations, federal law, and Iowa state law, by, among other things, collecting illegal recruitment fees, charging them

illegally for housing, failing to pay them wages as required by law and their employment contracts, and failing to pay them overtime wages as required by the FLSA.

## JURISDICTION

5. This Court has jurisdiction over this action pursuant to:

    a. 29 U.S.C. § 216(b) (FLSA); and

    b. 28 U.S.C. § 1331 (federal question subject matter jurisdiction).

6. Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over Plaintiffs' state law claims, because they are so related to the federal claims that they form part of the same case or controversy under Article III, Section 2 of the U.S. Constitution.

7. This Court has personal jurisdiction over Defendant Moreno, a resident of Franklin County, Iowa.

8. This Court has personal jurisdiction over Defendant G & G Moreno, Inc., which is headquartered in Franklin County, Iowa.

9. This Court is empowered to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## VENUE

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) because:

    a. Moreno is a resident of this judicial district; and

    b. G & G Moreno, Inc. is incorporated in Iowa, and is headquartered in Franklin County, and is subject to this Court's personal jurisdiction.

## PARTIES

11. Defendant Guadalupe Moreno is a natural person domiciled in Franklin County, Iowa.

12. Defendant Guadalupe Moreno is the owner of G & G Moreno, Inc. He had the power to hire and fire Plaintiffs and to supervise or otherwise control their work. He determined their job

assignments and wage rates and on a day-to-day basis directed and controlled the activities of G & G Moreno, Inc.

13. Plaintiffs are citizens and residents of Mexico who are fluent only in the Spanish language. In 2019, they were admitted to the United States on a temporary basis pursuant to 8 U.S.C. § 1101(a)(15)(H)(ii)(a) to perform labor "[o]n farms, maintaining farm buildings, including mowing and weeding around buildings. Preparing farm buildings after weather and livestock damage including helping repair damage walls, trusses and slats, repairing curtains, stalls/gating, feed tanks, feeders and feed lines. Tin sheeting walls, install doors, caulking structures."

14. Defendants operate an enterprise engaged in interstate commerce, providing services to businesses in Iowa, Nebraska and South Dakota. Plaintiffs worked with and handled materials that had moved in interstate commerce, including power washers and other tools and supplies. Defendants' enterprise had annual gross volume of business done in excess of $500,000 in both 2019 and 2020.

15. At all times relevant to this action, Defendants employed Plaintiffs within the meaning of the FLSA, 29 U.S.C. § 203(d), and were "employer[s]" within the meaning of 20 C.F.R. § 655.103(b). Defendants operated a business in Franklin County, Iowa and directed and controlled Plaintiffs' work, gave them job assignments, directed and oversaw their day-to-day activities at work and paid them their wages.

16. Plaintiff Martinez Godinez was employed by Defendants from approximately March 22, 2019 until January 22, 2020.

17. Plaintiff Rangel Cruz was employed by Defendants from approximately March 22, 2019 until February 8, 2020.

# FACTS

## Defendants' Participation in the H-2A Visa Program

18. An employer in the United States may import aliens to perform agricultural labor of a temporary nature if the U.S. Department of Labor ("DOL") certifies that: (1) there are insufficient available workers within the United States to perform the job; and (2) the employment of aliens will not adversely affect the wages and working conditions of similarly situated U.S. workers. 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a) and 1188(a)(1). Aliens admitted in this fashion are commonly referred to as "H-2A workers."

19. Employers seeking the admission of H-2A workers must first file an application for temporary employment certification with the DOL. 20 C.F.R. § 655.130.

20. The temporary labor certification application must include a job offer, commonly referred to as a "clearance order" or "job order," that complies with applicable regulations and is used in the recruitment of both U.S. and H-2A workers. 20 C.F.R. § 655.121(a)-(c). The DOL's regulations establish the minimum benefits, wages, and working conditions that must be offered in order to avoid adversely affecting U.S. workers. 20 C.F.R. §§ 655.0(a)(2), 655.122 and 655.135. The temporary labor certification application and the clearance order serve as the employment contract between the employer and the H-2A workers. 20 C.F.R. § 655.122(q).

21. Employers seeking to hire workers through the H-2A visa program must agree to pay all employees at least the highest of the Adverse Effect Wage Rate ("AEWR"), the prevailing hourly wage or piece rate, the agreed-upon collective bargaining wage, or the Federal or State minimum wage for every hour worked during a pay period. 20 C.F.R. §§ 655.120(a) and 655.122(l).

22. During 2019, the Iowa AEWR was $13.34 per hour. During 2019, the AEWR for Nebraska and South Dakota was $14.38. During 2020, the Iowa AEWR is $14.58 per hour and the AEWR for Nebraska and South Dakota is $14.99 per hour. The 2020 AEWRs went into effect on January 2, 2020.

23. Employers seeking to hire workers through the H-2A visa program must provide their H-2A workers with no-cost accommodations that comply with federal safety and health standards. 20 C.F.R. § 655.122(d)(1)(i).

24. Employers seeking to hire workers through the H-2A visa program must abide by the assurances contained in 20 C.F.R. § 655.135. These include:

   a. an assurance that the employer will comply with all applicable Federal, State, and local laws and regulations including, but not limited to, the FLSA, 20 C.F.R. § 655.135(e);

   b. an assurance that the employer will not intimidate, threaten, restrain, coerce, blacklist, discharge or in any manner discriminate against any person who has asserted the rights to protections afforded by the H-2A program, 20 C.F.R. § 655.135(h); and

   c. an assurance that the employer will not seek or receive from any prospective H-2A worker payments for obtaining the job, including recruitment fees, 20 C.F.R. § 655.135(j).

25. Employers seeking to hire workers through the H-2A program are bound by the obligations contained in 20 C.F.R. § 655.122. These include:

   a. an obligation to provide the worker with a copy of the work contract no later than when the worker applies for his visa, 20 C.F.R. 655.122(q);

- 5 -

b. an obligation to provide without charge to the worker the tools and equipment required to perform the work duties assigned, 20 C.F.R. 655.122(f); and

   c. an obligation to reimburse inbound and outbound transportation expenses and subsistence costs to qualifying workers, 20 C.F.R. 655.122(h)(1) and (h)(2).

26. Claiming a lack of available U.S. workers in the area of their operations, Defendants filed various applications to employ temporary foreign workers through the H-2A program during 2019 and 2020.

27. One of these labor certification applications sought admission of 18 workers for employment from March 22, 2019 to January 22, 2020 at a rate of $14.50 per hour, with housing provided in Ackley, Iowa. In this labor certification application, Defendants agreed to pay wages at least equal to the current AEWR, even if the AEWR rose above $14.50 per hour. Plaintiff Martinez Godinez was hired and employed under this temporary labor certification.

28. Another labor certification application sought admission of 15 workers for employment from March 22, 2019 to January 22, 2020 at a rate of $14.50 per hour, with housing provided in Neligh, Nebraska. In this labor certification application, Defendants agreed to pay wages at least equal to the current AEWR, even if the AEWR rose above $14.50 per hour. Plaintiff Rangel Cruz was hired and employed under this temporary labor certification.

29. The job description and requirements were identical in the temporary labor certification applications and accompanying clearance orders described in Paragraphs 27 and 28: "On farms, maintaining farm buildings, including mowing and weeding around buildings. Preparing farm buildings after weather and livestock damage including helping repair damage walls, trusses and slats, repairing curtains, stalls/gating, feed tanks, feeders and feed lines. Tin sheeting walls, install doors, caulking structures."

30. The temporary labor certification applications submitted by Defendants described in Paragraphs 27 and 28 each included clearance orders that purported to comply with applicable H-2A regulations and which were used in the recruitment of the H-2A workers, including Plaintiffs. 20 C.F.R. § 655.121(a)-(c). Among other things, these clearance orders contained the terms described in Paragraphs 24, 25 and 29.

31. The clearance orders included with the temporary labor certification applications described in Paragraphs 27 and 28 each contained a certification signed by Defendant Guadalupe Moreno that the orders described the actual terms and conditions of the employment and contained all the material terms and conditions of the job. These certifications are required by 20 C.F.R. § 653.501(c)(3)(viii).

32. Both of Defendants' temporary labor certification applications described in Paragraphs 27 and 28 were granted in full. The Customs and Immigration Services of the Department of Homeland Security in turn issued H-2A visas to fill the manpower needs described in the temporary labor certification applications and accompanying clearance orders.

### Plaintiffs' Recruitment and Travel to Iowa

33. Plaintiffs Martinez Godinez and Rangel Cruz were recruited and hired to help fill the jobs described in Defendants' temporary labor certification applications described in Paragraphs 27 and 28.

34. Neither Plaintiff had ever previously worked in the United States on an H-2A visa. As such, they were unfamiliar with the rules and regulations of the H-2A program.

35. Prior to travelling to the United States, while he was still in Mexico, Plaintiff Martinez Godinez had a telephone conversation with Defendant Guadalupe Moreno in which Moreno informed him that he would be charged $1,500 (U.S.) for a "visa fee," which would be

recouped from his wages once he was in the United States. Defendant Moreno told Plaintiff Martinez Godinez that he would be required to pay this "visa fee" in order to be re-hired for the following season.

36. Guadalupe Moreno instructed Martinez Godinez not to disclose the visa fee described in Paragraph 35 to consular officials during his visa interview at the consulate.

37. Around December 2018, while he was still in Mexico prior to travelling to the United States, Plaintiff Rangel Cruz was informed by Defendant Guadalupe Moreno that he would be charged an unspecified amount as a recruitment fee for being hired for the position. Moreno instructed Rangel Cruz that he should not mention this recruitment fee during his consular interview and instead should state that no such fees were being charged and that Moreno was paying for all of his visa and transportation-related expenses.

38. In March 2019, Plaintiffs Martinez Godinez and Rangel Cruz traveled at their own expense from their respective hometowns in Mexico to the U.S. consulate in Matamoros, Mexico in order to obtain their H-2A visas.

39. Plaintiffs incurred various expenses traveling to Matamoros and obtaining their H-2A visas, including, but not limited to, bus fare to Matamoros, the cost of lodging in Matamoros while their visa applications were being processed, visa application expenses, and a fee for issuance of Form I-94 at the Mexico/U.S. border.

40. The expenses incurred and paid by Martinez Godinez and Rangel Cruz as described in paragraph 39 were incurred primarily for the benefit or convenience of Defendants within the meaning of the regulations implementing the FLSA, 29 C.F.R. §531.3(d)(1).

41. In violation of 20 C.F.R. § 655.122(q), Plaintiffs did not receive a copy of their written job contracts when they applied for their H-2A visas at the U.S. Consulate in Matamoros, Mexico.

42. After being issued their H-2A visas, Plaintiffs were transported to Defendants' headquarters near Ackley, Iowa in a van owned by Defendants.

43. Defendants did not reimburse Plaintiffs Martinez Godinez and Rangel Cruz during their respective first workweeks for all the pre-employment expenses they incurred primarily for Defendants' benefit as described in Paragraphs 39-40. As a result, the wages paid Martinez Godinez and Rangel Cruz for their respective first workweeks of employment with Defendants were less than the applicable AEWR.

44. Although Plaintiffs Martinez Godinez and Rangel Cruz completed the first 50 percent of the work contract period, Defendants never reimbursed them in full for their inbound transportation and subsistence expenses, as required by their employment contracts and 20 C.F.R. § 655.122(h)(1).

### **Plaintiffs' Employment with Defendants**

45. After Plaintiffs arrived in Iowa, on approximately March 23, 2019, Defendant Guadalupe Moreno held a meeting with all of the H-2A workers, including Plaintiffs. At this meeting, Moreno announced to the group that in order to help defray his expenses, all of the workers would be charged "visa fees, " as well as rent for the housing provided to them. Moreno added that the workers would be required to pay these fees in cash installments drawn from their earnings.

46. In Iowa, for the first time, Defendants presented Plaintiffs with their employment contracts. The contracts were only in English, a language that Plaintiffs neither read nor understand.

47. Defendants failed to provide Plaintiffs with a copy of the employment contracts in a language Plaintiffs understood, in violation of 20 C.F.R. § 655.122(q).

### a. *Substandard Housing in South Dakota (Plaintiff Rangel Cruz)*

48. Plaintiff Rangel Cruz only spent about three days in Iowa, after which time Defendants divided the workers into work crews and dispatched about 14 workers, including Plaintiff Rangel Cruz, to Nebraska. From Nebraska, Rangel Cruz was later transferred temporarily to jobsites in South Dakota.

49. Defendants required Plaintiff Rangel Cruz and several of his H-2A co-workers to live and work in South Dakota for four separate one-week periods between March 2019 and February 2020.

50. Defendants had no temporary labor certification authorizing them to employ H-2A workers in South Dakota during 2019 or 2020.

51. While employed in South Dakota, Plaintiff Rangel Cruz was housed by Defendants in an apartment in Yankton, South Dakota. The apartment lacked sufficient beds for the occupants, forcing Plaintiff Rangel Cruz to sleep on the floor with no mattress.

### b. *Unlawful Pay Practices (Both Plaintiffs)*

### a. *Illegal Recruitment and Housing Fees*

52. Martinez Godinez paid Moreno three separate $500 cash installments from his wages, totaling $1,500, for the illegal visa fee described in Paragraphs 35-36 and 45.

53. Defendants collected the payments described in Paragraph 52 in the form of kickbacks from Plaintiff Martinez Godinez's wages. Plaintiff Martinez Godinez would cash his paycheck and then be required to immediately kick back to Moreno $500 in cash.

- 10 -

Case 3:20-cv-03044-KEM   Document 5   Filed 09/25/20   Page 10 of 19

54. Plaintiff Rangel Cruz paid Defendant Guadalupe Moreno a total of $1000 from his wages as illegal visa fees as described in Paragraphs 37 and 45.  Rangel Cruz paid an additional $1,500 from his wages to Defendant Moreno as rental payments for the housing Defendants furnished to him.  Defendants collected these payments in the form of kickbacks from Plaintiff Rangel Cruz's wages.  Plaintiff Rangel Cruz would cash his paycheck and then be required to kick back cash installments to Moreno.

55. Plaintiff Rangel Cruz made the cash kickback payments described in Paragraph 54 until he had ultimately paid Moreno a total of $2,500, ($1,000 for the illegal visa fee and $1,500 for the rent).

### b. Defendants Failed to Pay Plaintiffs for All of Their Compensable Hours Worked and Failed to Pay Overtime Wages

56. While employed by Defendants, Plaintiffs routinely worked more than 40 hours per week.

57. During the majority of the workweeks while they were employed by Defendants, Plaintiffs performed work that was not agricultural within the meaning of the FLSA, 29 U.S.C. 203(f), because it was neither performed in the employment of a farmer nor was it incident to or in conjunction with the farming operations of any farmer.

58. Plaintiffs Martinez Godinez and Rangel Cruz worked many hours remodeling hog confinements, fixing broken water lines, fixing broken feed lines, and repairing damage to the hog confinements caused by the pigs and weather.  Defendants also assigned Plaintiffs to power wash the inside of empty hog confinements.  In performing these activities, Plaintiffs had no contact with the livestock being raised on the various farms where the work was performed.

59. Defendants generally issued paychecks on a bi-weekly basis, every 14 days.

60. Defendants failed to provide Plaintiffs with any written statements of their hours worked and earnings, as required by 20 C.F.R. § 655.122(k).

61. Throughout their time working for Defendants, Plaintiffs routinely were not credited with or paid for all of their compensable hours worked.

62. Plaintiffs Rangel Cruz and Martinez Godinez were among the few H-2A workers with valid U.S. driver's licenses. Defendants regularly required Plaintiffs to drive their co-workers between their housing and the jobsites. Plaintiffs were never compensated for their time spent driving their co-workers in this fashion.

63. Because Defendants failed to credit Plaintiffs with all of the compensable hours worked, the wages paid Plaintiffs during some workweeks did not equal or exceed the FLSA minimum wage. For most workweeks, as a result of having their hours of work underreported, Plaintiffs' earnings did not equal or exceed the applicable adverse effect wage rate.

64. Because of Defendants' failure to reimburse inbound transportation and visa expenses, Defendants' underreporting of hours of work as described in Paragraphs 61 and 62, and collection of the unlawful kickbacks for visa and recruitment fees and for rent as described in Paragraphs 52 through 55, Defendants failed to pay Plaintiffs wages equaling or exceeding the adverse effect wage rate or the $14.50 per hour listed in Plaintiffs' work contract.

65. For those workweeks in which Plaintiffs performed work that was not agricultural within the meaning of the FLSA, as described in Paragraphs 57 and 58, Defendants failed to pay Plaintiffs for their work hours in excess of 40 at a rate not less than one and one-half times their regular rate, in violation of the FLSA, 29 U.S.C. § 207 and 29 C.F.R. § 780.11.

66. Plaintiff Rangel Cruz was forced to purchase at his own expense the tools required to perform his assigned job duties, in violation of 20 C.F.R. § 655.122(f) and his employment contract.

67. Defendants did not pay Plaintiff Martinez Godinez any wages whatsoever for his final two weeks of work. Defendants did not pay Plaintiff Rangel Cruz any wages whatsoever for his final four weeks of work.

68. At the beginning of January 2020, Defendant Guadalupe Moreno asked Plaintiff Rangel Cruz to overstay his H-2A visa and continue to work for Defendants. Moreno informed Rangel Cruz that if he did not agree to do this, he would not be able to work for Defendants in the future and, furthermore, would be blacklisted from the H-2A program and thereby unable to return to the U.S. to work for any other employer.

69. In response to Guadalupe Moreno's request described in Paragraph 68, Plaintiff Rangel Cruz told Moreno that he would not overstay his visa. As a result of Rangel Cruz's refusal to agree to work for them past the expiration date of his visa, Defendants retaliated against him by refusing to pay him any wages for the remainder of his time working for Defendants. Defendants also informed Rangel Cruz that he would not be invited back the following season to work with Defendants and would be blacklisted from the H-2A program.

70. In retaliation for Plaintiff Rangel Cruz's refusal to agree to overstay his visa as described in Paragraph 69, Defendants did not hire Plaintiff Rangel Cruz to work for them during the 2020-21 season.

71. At the conclusion of his contract, Plaintiff Rangel Cruz returned to Mexico at his own expense.

72. Defendants did not reimburse Plaintiff Rangel Cruz for the costs of his return travel to Mexico at the completion of his contract or for his subsistence costs en route, in violation of 20 C.F.R. § 655.122(h)(2) and in breach of the employment contract.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION:
### FAIR LABOR STANDARDS ACT (FLSA)
(*Both Plaintiffs v. Both Defendants*)

73. Plaintiffs bring this claim for Defendants' violations of the minimum wage and overtime provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*.

74. Defendants violated the minimum wage provisions of the FLSA, 29 U.S.C. § 206(a), by failing to pay Plaintiffs at least $7.25 per hour for their labor during each workweek.

75. The violations of the minimum wage provisions of the FLSA resulted in part from Defendants' failure during various weeks to compensate Plaintiffs for all hours worked (including time spent driving their co-workers to and from the various jobsites), as described in Paragraphs 61 through 63, and Defendants' failure to pay Plaintiffs any wages for their labor in the final workweeks of their employment, as described in Paragraphs 67 and 69.

76. Defendants violated the FLSA maximum hours provisions, 29 U.S.C. § 207, by failing to pay Plaintiffs at one and one half times their regular rate of pay for their hours worked in excess of 40 in those workweeks during which they performed non-agricultural work as described in Paragraphs 56-58 and 65.

77. As a consequence of Defendants' violation of the FLSA, Plaintiffs are entitled to recover their unpaid minimum wages; their unpaid overtime wages; an equal amount in liquidated damages; and costs of suit and reasonable attorney's fees pursuant to 29 U.S.C. § 216(b).

### SECOND CAUSE OF ACTION:
### BREACH OF CONTRACT

*(Both Plaintiffs v. Both Defendants)*

78. Defendants breached their obligations under the employment contracts by failing to pay Plaintiffs the contract wage rate of $14.50 per hour for every compensable hour they were employed, as described in Paragraphs 52 through 55, 61 and 64.

79. Defendants breached their obligations under the employment contract by failing to pay Plaintiffs the applicable AEWR per hour for all compensable hours of work performed in a workweek, as described in Paragraphs 63-64.

80. Defendants breached their obligations under the employment contract by illegally charging visa and recruitment fees and collecting kickbacks from Plaintiffs' wages, as described in Paragraphs 35-37; 45; and 52-55.

81. Defendants breached their obligations under the employment contract by failing to provide housing to Plaintiff Rangel Cruz at no cost, as described in Paragraphs 45 and 54-55.

82. Defendants breached their obligations to Plaintiff Rangel Cruz under the employment contract by failing to provide all the tools necessary to perform the job, as described in Paragraph 66.

83. Defendants breached their obligations under the employment contract by failing to provide Plaintiffs with the employment contract no later than the point where they applied for visas, as described in Paragraph 41.

84. Defendants breached their obligations under the employment contract by providing Plaintiff Rangel Cruz with unauthorized and substandard housing conditions during the period he was employed in South Dakota, as described in Paragraph 51.

85. Defendants breached their obligations under the employment contract by retaliating against Plaintiff Rangel Cruz after he refused to illegally overstay his visa, as described in Paragraphs 68-72.

86. Defendants breached their obligations under the employment contract by failing to reimburse Plaintiffs for the full amount of their inbound transportation and subsistence expenses after they completed 50% of the contract period, as described in Paragraph 44.

87. Defendants breached their obligations to Plaintiff Rangel Cruz under the employment contract by failing to reimburse him for the full amount of his return travel to Mexico and corresponding subsistence expenses after he completed the contract period, as described in Paragraphs 71-72.

88. Defendants' contractual violations as described in this count caused Plaintiffs substantial injuries, including pecuniary harm in the form of lost contract wages and other monetary damages.

**THIRD CAUSE OF ACTION:**
IOWA PRIVATE RIGHT OF ACTION FOR CONSUMER FRAUD ACT
(Iowa Code Chapter 714H)
(***Plaintiff Rangel Cruz v. Both Defendants***)

89. The Iowa Private Right of Action for Consumer Fraud Act (IPRACFA) prohibits individuals from engaging in unfair practices or acts that they know or reasonably should know are unfair or deceptive in connection with the sale, lease, or advertisement of "consumer merchandise." Iowa Code § 714H.3(1).

90. A "deceptive" practice means "an act or practice that is likely to mislead a substantial number of consumers as to a material fact or facts." Iowa Code § 714H.2(5).

91. An unfair practice "means an act or practice which causes substantial, unavoidable injury to consumers that is not outweighed by any consumer or competitive benefits which the practice produces." Iowa Code § 714.16(1)(n).

92. IPRACFA further prohibits concealment or misrepresentation of material facts in the advertisement of "consumer merchandise" with the intent of having others rely on these misrepresented or concealed facts. *Id*.

93. "Consumer merchandise" includes rental of residential real estate:

    a. "Consumer merchandise" means merchandise offered for sale or **lease**, or sold or **leased**, primarily for personal, family, or household purposes. Iowa Code § 714H.1(4).

    b. The definition of "merchandise" germane to a claim under IPRACFA is found at in Iowa Code § 714.16, and includes "any objects, wares, goods, commodities, intangibles, securities, bonds, debentures, stocks, **real estate** or services."

94. Defendants violated IPRACFA by charging Plaintiff Rangel Cruz rent for housing that they were required by law to provide to him without charge.

95. Defendants' unfair practice and false promise described in Paragraph 94 was material to the transaction.

96. Plaintiff Rangel Cruz is entitled to recover his actual damages, attorney's fees, and court costs. Iowa Code § 714H.5.

97. Defendants' unfair practice and false promise constitute willful and wanton disregard for the law and the rights of Plaintiff Rangel Cruz, entitling him to statutory damages up to three times the amount of actual damages. Iowa Code § 714H.5(4).

**PRAYER FOR RELIEF**

- 17 -

Case 3:20-cv-03044-KEM   Document 5   Filed 09/25/20   Page 17 of 19

WHEREFORE, Plaintiffs pray that this Court:

(a) Enter judgment in favor of Plaintiffs and against Defendants, jointly and severally, on Plaintiffs' FLSA minimum wage claims as set forth in the First Cause of Action;

(b) Award Plaintiffs their unpaid minimum wages, an equal amount in liquidated damages, costs of court, and attorney's fees;

(c) Declare that Defendants have violated the overtime provisions of the Fair Labor Standards Act, 29 U.S.C. § 207, as set forth in Paragraphs 56-58 and 65;

(d) Enter judgment in favor of Plaintiffs and against Defendants, jointly and severally, on Plaintiffs' FLSA overtime wage claims as set forth in the First Cause of Action;

(e) Award Plaintiffs their unpaid overtime wages, an equal amount in liquidated damages, costs of court, and attorney's fees;

(f) Enter judgment in favor of Plaintiffs and against Defendants, jointly and severally, on their contract claim as set forth in their Second Cause of Action;

(g) Award Plaintiffs damages for Defendants' contractual breaches;

(h) Enter judgment in favor of Plaintiff Rangel Cruz and against Defendants, jointly and severally, on his Unfair and Deceptive Acts and Practices claim as set forth in the Third Cause of Action;

(i) Award Plaintiff Rangel Cruz statutory damages three times the amount of actual damages with respect to his Unfair and Deceptive Acts and Practices claim;

(j) Award Plaintiffs pre- and post-judgment interest as allowed by law;

(k) Award reasonable attorney's fees;

(l) Award Plaintiffs their costs; and

(m) Grant such further relief as this Court deems just and appropriate.

Respectfully submitted,

/s/Lorraine A. Gaynor
Lorraine A. Gaynor     AT0011144
Iowa Legal Aid
1700 South 1st Ave, Suite 10
Iowa City, Iowa 52240

tel.: 319-351-6570 │ fax: 319-351-0079

lgaynor@iowalaw.org
ATTORNEY FOR PLAINTIFFS